**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF OHIO, OHIO A. PHILIP RANDOLPH INSTITUTE, LASHUNDA LEE, MUNIA MOSTAFA, AUDRIANNA VICTORIAN RODRIGUEZ, and HANNAH TUVELL, | |
| | CASE NO. 2:20-cv-1638 |
| *Plaintiffs*, | |
| | JUDGE MICHAEL H. WATSON |
| v. | Magistrate Judge Elizabeth Preston Deavers |
| FRANK LAROSE, in his official capacity as Secretary of State of Ohio, | |
| *Defendant*. | |

**AMENDED COMPLAINT**

1.     Ohio has imposed a new set of rules for its 2020 primary election that will disenfranchise voters on a staggering scale as they contend with the COVID-19 pandemic.

2.     On Friday, March 27, 2020, through enactment of House Bill 197 ("H.B. 197"), Ohio (1) moved its abruptly canceled primary election from March 17 to April 28; (2) refused to extend the voter registration deadline, which passed on February 18, to at most thirty days prior to April 28; (3) ignored the pleas of bipartisan state and local elections officials, and imposed a cumbersome multi-step, multi-mailing process that will be impossible for elections officials and voters to complete in the time left before the election concludes; and (4) eliminated in-person voting for all but a narrow set of voters, leaving no recourse for voters who do not receive absentee ballots in time to cast them by mail.

3.     Research indicates that these changes may hit Black and brown voters the hardest.

4.     The new rules violate the National Voter Registration Act by denying voters an effective means to register and cast a ballot in the 2020 primary election.

5.      These rules will also deprive Ohioans of their fundamental right to vote, in violation of the First and Fourteenth Amendments of the U.S. Constitution.

6.      Immediate judicial relief is necessary to prevent the State from compounding the current public health crisis into a crisis for democracy in Ohio.

## PARTIES

**A. Plaintiffs**

7.      Plaintiff League of Women Voters of Ohio ("LWVO") is a non-partisan, non-profit organization located at 100 E Broad St. #1310, Columbus, OH 43215. LWVO is a membership organization with approximately 3,000 members across 30 local leagues. LWVO is affiliated with the League of Women Voters of the United States and has fought since 1920 to hold government accountable and engage all Americans in the political process. LWVO's mission is to promote civic engagement by encouraging the informed and active participation of citizens in government, including by registering citizens to vote, providing information to citizens about how to vote, and influencing public policy on voting and other issues through education and advocacy.

8.      Ahead of the primary election scheduled for March 17, LWVO and its local leagues registered voters across the State. The State's response to the spread of COVID-19 has required LWVO to divert significant resources toward making sure that prospective voters know when and how they can vote in the ever-changing circumstances and are not disenfranchised.

9.      As a result of H.B. 197's enactment, LWVO is now dedicating significant resources to helping prospective voters throughout the State navigate the new multi-stage absentee voting process in the short timeline before the April 28 primary election—for example, one local league is helping residents of a Summit County retirement home who had planned to vote in person on March 17 to now navigate the mail voting process. More generally, LWVO is fielding questions

and sharing public education information about the timing and conduct of the primary election. League members and staff are under significant pressure to complete this work on an extremely short timeline and are concerned that their constituents will not be able to vote in the primary election.

10. H.B. 197's burdensome process will disenfranchise LWVO members, as well as voters they have helped register. Many LWVO members, as well as many of the voters they serve, do not own printers or have money to buy ink and stamps for mailing out their absentee ballot applications. Many places people go to print—such as libraries— are closed. These individuals must rely on their local boards of elections to mail absentee ballot applications to them. Mail delivery in Ohio takes 3–5 days even under ordinary circumstances. LWVO is concerned that H.B. 197's tight timeline for sending postcards, requesting ballots, receiving ballots, and returning ballots will disenfranchise its members and other Ohio voters.

11. Plaintiff Ohio A. Philip Randolph Institute ("Ohio APRI") is a state chapter of the A. Philip Randolph Institute, a national organization for African-American trade unionists and community activists affiliated with the AFL-CIO and established in 1965 to forge an alliance between the civil rights and labor movements. Ohio APRI has eight chapters across the State, including in Columbus, and members across the State. Ohio APRI's mission includes voter outreach, voter education, and voter registration, and the majority of Ohio APRI's resources are dedicated to voter engagement work.

12. Ohio APRI members spent several weeks helping eligible Ohioans register to vote prior to the February 18 deadline for the March 2020 primary.

13. Members of Ohio APRI, as well as individuals in the communities in which Ohio APRI conducts voter registration and education drives, planned to vote in person at their polling

places on March 17. Many of these individuals have never voted by mail. Because they are unaccustomed to voting by mail, the multi-step vote-by-mail process established under H.B. 197 may be confusing for them. The confusion also increases the chances that they make an error on their application, and that will likely cause additional delays in the process. Because the State has shifted the date of the 2020 primary multiple times, they may not be aware of the newly established April 28 date until they receive a mailing from their board of elections. Even if the process were to go smoothly, many of these individuals will not be able to complete the multi-step process in time to cast a ballot and will be unable to vote in person under the narrow exception for in-person voting created by the State. For these same reasons, H.B. 197's burdensome process may disenfranchise Ohio APRI members.

14.     Plaintiff Lashunda Lee is an eligible, registered, and regular voter who has lived in Ohio for more than thirty years. Ms. Lee has never voted by mail, only in person on Election Day, and planned to vote in person in the 2020 primary. She does not own a printer, does not have one reasonably available to her, and the places she normally goes to access a printer are currently closed. She is concerned that going out to try to print the ballot application and mail it in could expose her or her family to COVID-19 and is worried that she will not be able to exercise her fundamental right to vote in the upcoming primary if she is required to follow the procedures required by the State.

15.     Plaintiff Munia Mostafa is an eligible, registered, and regular voter in Ohio, and has been since she became a naturalized citizen in 2017. Ms. Mostafa has never voted by mail, only voted in person on Election Day, and planned to vote in person in the 2020 primary. She does not have a working printer at home and is limiting her trips outside her home because she does not want to expose her two children to COVID-19. She is concerned that the process of submitting an

absentee ballot application—which could require her to go to a post office and office supply store or printing location—could place the health of her family at risk. She is also concerned that any delays in the process H.B. 197 lays out for voting absentee or any mistakes she makes during the unfamiliar absentee voting process could deny her the opportunity to cast a ballot in the upcoming primary.

16.     Plaintiff Audrianna Victorian Rodriguez is an eligible, registered, and regular voter in Ohio, and had planned to vote in person in the 2020 primary. Ms. Rodriguez moved to a different precinct within Cuyahoga County and intended to update her voting address when she voted in person on March 17. On March 28, Ms. Rodriguez submitted a voter registration application through the State's online portal to update her voting address. She is concerned that her updated voter registration application will not be processed before the 2020 primary concludes and, as a result, she will not be provided a regular absentee ballot to vote.  Ms. Rodriguez does not own a printer or have stamps and she is concerned that she will not be able to complete the absentee ballot request process in time if she is required to follow the procedures required by the State.

17.     Plaintiff Hannah Tuvell is a life-long Ohio resident who has never registered to vote before and would like to vote in the 2020 primary election. Ms. Tuvell submitted a voter registration application on the Secretary of State's website on March 29, 2020. She received confirmation that the application had been forwarded to her board of election. Ms. Tuvell will not be able to vote in the upcoming primary because H.B. 197 prohibits her county board of elections from processing voter registration applications submitted after February 18.

**B.  Defendant**

18.     Defendant Frank LaRose serves as Secretary of State of the State of Ohio. His office is located at 22 N. 4th Street Columbus, OH 43215. He is sued in his official capacity.

19. Under Ohio law, the Secretary of State is the chief election officer in the State, with the power to issue directives to prepare rules and instructions for the conduct of elections. Ohio Rev. Code Ann. §§ 3501.04, 3501.05, 3501.053.

20. Under Ohio law, the Secretary of State has the power to "issue instructions as to the proper method of conducting elections to members of the boards of elections by permanent or temporary directives." *Id.* § 3501.053(A).

21. The Secretary of State can issue a temporary directive beginning ninety days before Election Day through the fortieth day following the election and these directives, unlike permanent directives, are not subject to public review and public comment. *Id.* § 3501.053(A)(2).

## JURISDICTION

22. Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution, and under Section 8 of the National Voter Registration Act of 1993, 52 U.S.C. § 20507.

23. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States, because Plaintiffs bring this action to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution of the United States and federal law, and because Plaintiffs bring this action to secure equitable relief under federal law providing for the protection of voting rights.

24. This Court has personal jurisdiction over Defendant, who is sued only in his official capacity as an officer of the State of Ohio.

25. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Plaintiff Mostafa resides in Columbus, Ohio; LWVO is located in Columbus, Ohio and has members in the region;

APRI has a chapter and members in the region; and a substantial part of the events that gave rise to Plaintiffs' claims occurred in this judicial district.

## FACTS

### COVID-19's Impact on Ohio's 2020 Primary Election

26.     COVID-19 presents serious risk to all Ohioans, especially to people who are over the age of sixty, have underlying health conditions (such as heart disease, diabetes, or lung disease), have weakened immune systems, or who are pregnant. As of March 29, 2020, there have been 1,653 confirmed cases and twenty-nine deaths in Ohio. Ohio Dep't of Health, *Resources for Local Health Districts and Providers – COVID-19*, https://odh.ohio.gov/wps/portal/gov/ odh/know-our-programs/Novel-Coronavirus. These numbers are rising daily.

27.     Prior to the COVID-19 outbreak, Ohio's 2020 primary elections were scheduled for March 17, 2020.

28.     On March 9, 2020, Ohio Governor Mike DeWine declared a state of emergency "to protect the well-being of the citizens of Ohio from the dangerous effects of COVID-19." The Office of Governor Mike DeWine, *Executive Order 2020 O1D* (Mar. 9, 2020), https://content.govdelivery.com/attachments/OHOOD/2020/03/09/file_attachments/1396418/Exe cutive%202020-01D.pdf.

29.     On March 11, the World Health Organization declared the COVID-19 outbreak a pandemic. Jamie Gumbrecht & Jacqueline Howard, *WHO Declares Novel Coronavirus Outbreak a Pandemic*, CNN (Mar. 11, 2020, 8:45 PM), https://www.cnn.com/2020/03/11/health/ coronavirus-pandemic-world-health-organization/index.html.

30.     On March 12, the Ohio Department of Health ("ODH") issued an order prohibiting mass gatherings of one-hundred or more persons until the Governor's office modifies or rescinds

7

the state of emergency. Ohio Dep't of Health, *Director's Order*, (Mar. 12, 2020), *available at* https://governor.ohio.gov/wps/portal/gov/governor/media/news-and-media/bans-mass-gatherings-of-100-or-more.

31. On March 13, President Trump declared the COVID-19 outbreak a national emergency. White House, *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Diseaase (COVID-19) Outbreak*, (Mar. 13, 2020).

32. On March 16, Governor DeWine announced at a press conference that state officials had determined it was unsafe to hold the election the following day, and that he anticipated, and would not contest, a private lawsuit to postpone the election. That lawsuit was brought in the Franklin County Court of Common Pleas.

33. The same day, the Franklin County Court of Common Pleas denied the motion to delay the primary election. *See Reardon v. LaRose*, 20-cv-2105 (Franklin Cty. Ct. Com. Pl Mar. 16, 2020).

34. Later that same evening of March 16, ODH Director Dr. Amy Acton issued an order prohibiting polling locations from operating the following day due to COVID-19. Ohio Dep't of Health, *Director's Order*, (Mar. 16, 2020), *available at* https://governor.ohio.gov/wps/portal/gov/governor/media/news-and-media/order-on-closure-of-polling-locations.

35. Immediately following ODH's Order, Defendant Secretary of State Frank LaRose issued Directive 2020-06, which postponed the March 17, 2020 presidential primary election to June 2, 2020. Ohio Sec'y of State, *Directive 2020-06*, (Mar. 16, 2020).

36. Secretary LaRose's Directive stated: "The boards of elections are prohibited from processing any new voter registrations for the June 2, 2020 presidential primary election. The February 18, 2020 voter registration deadline remains the voter registration deadline." *Id.* at 1.

37.    On March 17, two legal actions challenged the Secretary's authority to set a new election date. *State ex rel. Ohio Democratic Party v. LaRose*, No. 2020-0388 (Ohio Sup. Ct. Mar. 17, 2020); *Reardon v. LaRose*, No. 20-cv-2105 (Franklin Cty. Ct. Com. Pl. Mar. 17, 2020) (answer and cross claim). One of these cases, filed in the Ohio Supreme Court, requested the State move up the date of the primary and move to an all-mail election.

38.    Plaintiffs LWVO and Ohio APRI submitted a brief as amici curiae to the Ohio Supreme Court informing the Court that the prohibition on processing registrations received after February 18, 2020 in Defendant LaRose's Directive 2020-06 violated the National Voter Registration Act ("NVRA") and requesting that the Court, in considering how to proceed with Ohio's 2020 primary election, ensure that any relief protect Ohio electors who would find it prohibitively challenging to exercise their right to vote under the current circumstances given the State's restrictive mail voting practices. Brief of Amici Curiae of the League of Women Voters of Ohio and Ohio A. Philip Randolph Institute in Support of Neither Party, *State ex rel. Ohio Democratic Party v. LaRose*, No. 2020-0388 (Ohio Mar. 24, 2020).

39.    On March 18, 2020, Plaintiffs LWVO and Ohio APRI formally notified Defendant LaRose that his failure to shift the voter registration deadline to within 30 days of the new June 2 primary date violates Section 8 of the NVRA, 52 U.S.C. § 20507(a), and copied leaders of the Ohio General Assembly on this notice letter.

40.    On March 22, Governor DeWine and ODH's Dr. Acton issued a "stay at home order" requiring Ohioans to remain at home except for essential business from March 23 through April 6. Ohio Dep't of Health, *Director's Stay at Home Order* (March 22, 2020), https://coronavirus.ohio.gov/static/DirectorsOrderStayAtHome.pdf.

41.    Mail delivery is considered an essential business operation under the order, but libraries and other places that may offer free or low-cost printing are not named and hence are unlikely to remain open during the duration of the stay-at-home-order. All library locations in Columbus, Ohio, closed on March 13 and will remain closed at least through April 6, as will other libraries throughout the State.

42.    On March 29, President Trump extended federal guidance currently in place, which encourages social distancing through April 30. Brittany Shammas, et al., *New York Surpasses 1,000 Deaths in Coronavirus Pandemic as Trump Says Social Distancing Guidelines Will Remain Through April*, Wash. Post (Mar. 29, 2020), https://www.washingtonpost.com/world/2020/03/29/coronavirus-latest-news/.

### Lead-up to the Enactment of H.B. 197

43.    In the wake of Secretary LaRose's Directive 2020-06 and subsequent lawsuits, the Ohio General Assembly sought to assert its authority to set the date of the 2020 primary election by passing legislation.

44.    On March 21, Secretary LaRose sent a letter to the Ohio General Assembly proposing that the legislature set a June 2 primary, allow for in-person voting on that date, and mail every registered voter a postage pre-paid absentee ballot application. Ohio Sec'y of Sate, *Letter to Members of the Ohio General Assembly* (March 21, 2020), https://www.sos.state.oh.us/globalassets/media-center/news/2020/2020-03-21_letterto legislators.pdf.

45.    In his letter, Secretary LaRose stated that "June 2 is the earliest date [for the election] due to the logistical realities of conducting a vote-by-mail election, the ever-evolving health realities of protecting against the spread of Coronavirus and the sacred responsibility we

have as public officials to preserve the integrity of our election" and warned that "[a] plan that sets unattainable timelines for mailing absentee requests to voters, or calls for inadequate procedures for ensuring that every voter has an opportunity to cast a ballot at no charge, would likely fail a legal challenge." *Id.*

46.     Secretary LaRose noted that even the June 2 timeframe he recommended "does not come without its challenges. Historically, when the General Assembly authorizes the Secretary to do so, it has taken as long as five months from the time the Secretary of State's office begins to mail the absentee ballot request form to all 7.7 million registered voters in Ohio until election day. . .I have directed my team to achieve an incredibly aggressive timeline that would bring the entire absentee ballot process to a close within two and a half months. This includes gathering data from all 88 county boards of elections, verifying that data, designing, printing, pre-sorting and mailing more than 7 million ballot request forms, instructions and return envelopes. This plan also allows for a tight but reasonable amount of time for voters to submit their requests, receive their ballots, and return their voted ballots to their respective board of elections."

47.     On March 24, the bipartisan Ohio Association of Election Officials ("OAEO") sent a letter to the leaders of the Ohio legislature commenting on a pending legislative proposal to set a new date for the primary to April 28. The election officials stated that "April 28th is too soon to conclude the election" because "there are simply too many steps in the process to allow ample time for voters to receive and vote their ballots in the timeframes allotted," and they suggested May 19 as a "best-case scenario" election date. OAEO noted in its letter that "[t]he postal service advises that it takes 3–5 days for mail to reach its destination."

48. On March 25, the Ohio legislature nonetheless passed legislation, H.B. 197, setting the primary date at April 28 and directing the election to be held without Election Day polling locations for the vast majority of voters or early in-person voting.

49. On March 27, Governor DeWine signed the legislation into law.

**Requirements of H.B. 197**

50. H.B. 197 prohibits boards of elections from "process[ing] any voter registration application submitted after February 18, 2020." H.B. 197 § 32(B)(3), (C)(1)(a).

51. H.B. 197 sets out a cumbersome, multi-step process for voting by mail, all of which needs to take place in the thirty-two days between March 27 and April 28. *Id.* § 32(B)(1).

52. Under H.B. 197, the Secretary "shall produce and send a postcard" to registered voters in Ohio informing them of the new election date and the "procedures and deadlines to apply for absent voter's ballots." *Id.* § 32(C)(1)(b).

53. Voters must then "apply by mail to the appropriate board of elections" for their absentee ballot. *Id.* § 32(C)(3). Under current Ohio law, a voters must "make written application" for absentee ballots. Ohio Rev. Code Ann. § 3509.03(A). There are two ways voter can make a written request. They can download and print an application available on the Secretary's website and mail the request to their boards of elections. Or, they can request their boards of elections send an them absentee applications by mail. The last day to request absentee ballots is April 25 at noon. H.B. 197 § (C)(3).

54. H.B. 197 requires county elections officials to process absentee ballot applications and determine whether applications "contain[s] all of the required information." *Id.* § 32(C)(5)(A). Boards must notify applicants of any additional information required and applicants must provide that information in order for their "application to be valid." *Id.*

12

55.     Only when election officials determine that an application is valid, can they mail the applicant an absentee ballot. *Id.* § 32(C)(6).

56.     Finally, voters must mail back their voted absentee ballots postmarked the day prior to Election Day, by April 27 in order for their ballots to count. *Id.* § 32(E)(2).

57.     Under current Ohio law, boards of elections may reject absentee ballots for missing or non-matching information on the absentee ballot identification envelope, including mismatching signatures, incorrect date of birth (including substituting the current date), or errors in the identification field, such as transposition of the SSN and Driver's license fields. Ohio Rev. Code Ann. §§ 3509.06(D)(1), (D)(2)(a).

58.     H.B. 197 requires voters to cure any provisional ballots or mistakes on their absentee identification envelopes by May 5, which is before the deadline for ballots to be received (May 8). Yet Secretary LaRose's Directive 2020-07 implementing the statute does not require the official canvass to begin until May 13. Existing Ohio law requires boards of elections to mail voters a notification of any deficiencies in their ballot envelopes. Ohio Rev. Code Ann. § 3509.06(D)(3)(b).

59.     H.B. 197 states that only two classes of voters may vote in person on Election Day: voters with disabilities who wish to vote using an accessible electronic voting machine, and voters who are unable to receive mail at their residence or another location. H.B. 197, § 32(D)(1)(a)–(b). The Act does not allow in-person voting for anyone else, such as those with unreliable mail delivery or those who request but do not receive their mail ballots in time to cast it by the postmark deadline.

**Impact of House Bill 197 on Ohio Primary Voters**

*Unlawful Voter Registration Deadline*

60.     H.B. 197's voter registration deadline of February 18 is unlawful and will disenfranchise Ohio's prospective voters.

61.     Thousands of Ohioans have submitted voter registration forms since February 18. They are barred from voting on April 28 because of H.B. 197's hard voter registration cut-off. A single nonprofit organization, Ohio Organizing Collaborative, helped 2,233 Ohioans complete applications to register to vote between February 19 and March 13 and transmitted their applications to the appropriate boards of elections.

62.     Others would have registered after February 18, and would register by March 30, if Defendant extends the registration deadline extended to comply with federal law.

63.     Plaintiff Tuvell submitted a voter registration application after February 18 and will not be able to vote on April 28 because H.B. 197 prohibits county boards of elections from processing applications submitted after February 18.

64.     Plaintiff Rodriguez attempted to update her address by submitting a voter registration application online on March 28, after moving between precincts. Due to H.B. 197, and despite the fact that the election is not set to end for nearly one month, she will not be able to vote a regular absentee ballot in the rescheduled primary election.

65.     Plaintiff LWVO has fielded numerous calls from members and prospective voters concerned that they will not be able to vote on April 28 due to H.B. 197's February 18 voter registration deadline.

66.     Plaintiff Ohio APRI engages many voters who rent rather than own their residences and therefore tend to move more often. Many of these voters will be unable to register to vote or update their voter registrations due to H.B. 197.

### Unduly Burdensome Vote-by-Mail Process

67.     H.B. 197's cumbersome, multi-step process for voting by mail and tight deadline will disenfranchise Ohio voters. The time it will take election officials to design, print, and mail postcards to voters, followed by the multiple subsequent rounds for completion, review, and mailing of forms, will be longer than the time remaining for Ohioans to vote by mail.

68.     Both Defendant Secretary LaRose and the OAEO have stated publicly that the Act's April 28 timeline is not feasible for election officials and voters.

69.     The vast majority of Ohio voters cast their ballots in person on Election Day. For example, according to data provided on the Secretary of State's website, in the 2016 Primary Election, only 450,901 voters cast absentee ballots either in person during the early voting period or by mail: a fraction of the 3,302,832 total ballots cast in the election. This indicates that more than 86% of Ohio voters who participated in the last presidential primary voted in-person on Election Day—and 2016 was not an anomaly. These voters will now be relying heavily on the absentee mail voting process as it is their only option for casting ballots in a mail-ballot only election. *See* Ohio Sec'y of State, *2016 Official Election Results*, https://www.sos.state.oh.us/elections/election-results-and-data/2016-official-elections-results/ (comparing the voter turnout by county and absentee supplemental reports for the March 15, 2016 primary election).

70.     At least some county boards of elections have scheduled their staff on staggered shifts to allow for social distancing and reduce the likelihood of staff contracting or spreading

COVID-19. Having fewer staff will make it more difficult for county boards of elections to process an increased influx of mail absentee ballot applications and ballots from voters who had planned to vote in-person on Election Day. *See* The Editorial Board, Reset the Date, Toledo Blade (Mar. 29, 2020, 12 AM), https://www.toledoblade.com/opinion/editorials/2020/03/29/reset-the-date-ohio-primary-2020-election-voting/stories/20200329030.

71.     "Fewer than half of Ohio's county elections offices . . . have the equipment to print absentee ballots in-house," according to an election official. These boards of elections must rely on the four outside vendors who have been approved to print absentee ballots. *Id.*

72.     In the past, county boards of elections in Ohio have also flagged or rejected absentee ballot applications due to errors such as allegedly mismatched signatures or missing dates of birth, causing applicants to have to restart the application process. Julie Carr Smyth, *AP Exclusive: Thousands of Ohio Absentee Applications Denied*, AP (Dec. 16, 2019), https://apnews.com/ddfed70e98d79cf0bee49eb1d9fd85b9.

73.     The process laid out in H.B. 197 leaves no room for delays on the part of the postal service or overloaded county elections boards, no room for printing delays, and no room for error on the part of voters or elections officials. Any errors in the process will put voters outside the tight timeline for casting their absentee ballots and result in disenfranchisement.

74.     Many Ohio voters had planned to vote in person in the 2020 primary election and are unfamiliar with the mail voting process. Plaintiffs Lee and Mostafa, for example, have only ever voted in person and planned to vote in person in the 2020 primary. Many voters in the communities Plaintiff APRI engages have never before voted by mail.

75.     Having always voted in person, Plaintiff Mostafa finds the absentee process confusing and worries that she will not have enough time to correct any deficiencies on her

absentee ballot application or absentee identification envelope and vote in the April 28 primary election.

76.     Acquiring an absentee ballot application without a printer adds an additional, unnecessary step to the process, making it nearly impossible to meet the April 27 postmark deadline. Many Ohio voters do not have working printers in their homes or do not own printers at all; cannot access low-cost printing at libraries because of COVID-19 closures; or do not have the option of using their friends or neighbors' printers because they do not wish to risk their health and violate Ohio's stay at home order. Plaintiffs Lee, Mostafa, and Rodriguez all lack access to a working printer in their homes, as do the Executive Director of Plaintiffs LWVO and the President of Ohio APRI. The places that Plaintiff Lee would normally go to print documents for free, such as the Cleveland Public Library and Cuyahoga Community College, are closed due to COVID-19. Many voters Plaintiff APRI engages do not have access to a printer, and a number are older or otherwise at high risk for serious health consequences due to COVID-19 such that they cannot leave home to use others' printers.

77.     In this era of digital correspondence, many voters do not regularly keep postage stamps in their homes, and under the process set out by H.B. 197, would need to risk their health to go to a post office or other essential business establishment to acquire postage to mail their absentee ballot applications. Plaintiff Rodriguez, for example, does not have stamps in her home.

78.     Mail service is likely to take longer than normal. Voters have experienced significant election-related mail delays around receiving their absentee ballots in time to vote in the previously scheduled March 17 election. For at least one voter who requested her absentee ballot prior to the original March 14 deadline, it took as long as eight days from the time of request

to the time of receipt of her ballot. Postal workers in Ohio have contracted COVID-19, which will likely further slow the process for the new April 28 election date.

79. Many LWVO members and constituents, APRI members, and other Ohioans do not have reliable postal service, such as students who are currently locked out of their dormitories. They may not receive the Secretary's postcard notifying them of that they need to request absentee ballots, when a mailing is likely a necessary prerequisite for many to understand the fast-changing rules surrounding Ohio's 2020 primary. Further, these individuals might experience greater delays due to mail forwarding from dormitories or undeliverable addresses.

80. H.B. 197 provides insufficient time for voters to cure their provisional ballots or any mistakes on their absentee ballot envelopes. The seven-day cure period mirrors the timeframe in existing law, but in sharply different circumstances. By the time a voter receives a mailed notice of a problem with her ballot she may not have time to mail back the corrected information so it arrives by May 5. In-person opportunities to cure ballot problems are helpful in normal times, but much less so when voters may still be under a stay-at-home order and will certainly face health risks by leaving their homes. Plaintiff LWVO is concerned about its members and constituents being unable to cure any ballot mistakes.

81. The unrealistic and unyielding process H.B. 197 sets forth for mail voting will unduly burden and disenfranchise Plaintiffs Lee, Mostafa, and Rodriguez; members and constituents of Plaintiffs LWVOH and Ohio APRI; and many other Ohio voters. Defendant LaRose and the State of Ohio have no interest sufficient to justify burdening Ohio voters and thereby violating their constitutional right to vote.

### *Insufficient In-Person Voting*

82.     H.B. 197 prohibits in-person voting for anyone other than voters with disabilities who wish to vote using an accessible electronic voting machine and for voters who are unable to receive mail at their addresses. H.B. 197, § 32(D)(1)(a) –(b).

83.     H.B. 197 therefore disenfranchises all other classes of voters who will face challenges voting by mail, such as voters with unreliable mail service, voters who request absentee ballots but do not receive their ballots in time to meet the postmark deadline, and voters who, for a whole host of reasons, are simply unable to complete the entire multi-stage process required by H.B. 197 in time to vote by mail.

84.     H.B. 197's near-exclusive vote-by-mail system is likely to have a disproportionate impact on Black and brown voters and young people. Younger voters and voters of color were "at least twice as likely as older and white voters to have their [vote-by-mail] ballots rejected in the presidential elections of 2012 and 2016" in Florida. Daniel A. Smith, *Vote-By-Mail Ballots Cast in Florida*, ACLU Florida at 3 (September 19, 2018), https://www.aclufl.org/sites/default/files/aclufl_-_vote_by_mail_-_report.pdf.

### Ohio's H.B. 197 Is an Outlier Among States' Vote-By-Mail Procedures and COVID-19 Responses

85.     Five states—Colorado, Hawaii, Oregon, Utah, and Washington—conduct their elections entirely by mail, and at least sixteen states authorize local governments to opt into a vote-by-mail system, allow all-mail absentee voting in local or special elections, or permit certain jurisdictions to conduct elections by mail based on population size.

86.     Every jurisdiction which both has a voter registration requirement and conducts either all or some of its elections by mail automatically mails ballots to active voters without requiring voters to apply for absentee ballots.

87.     All five states that run all-mail elections require county boards of elections to provide in-person voting options prior to and on Election Day.

88.     Other states that postponed their primaries because of COVID-19 set the new election date for June (Connecticut, Indiana, Maryland, Pennsylvania, Rhode Island, Louisiana, New York, Kentucky), except for Georgia, which postponed its primary to May 19.  Nick Corasaniti & Stephanie Saul, *12 States and Territories Have Postponed Their Primaries Because of Coronavirus. Here's a List*, N.Y. Times, Mar. 28, 2020, https://www.nytimes.com/article/2020-campaign-primary-calendar-coronavirus.html.

89.     In Alaska, Wyoming, and Kansas, states where the Democratic Party runs the presidential primary or caucus, elections were not postponed but are now vote by mail. Voters do not have to apply for a vote-by-mail ballot.

### CLAIMS FOR RELIEF

**Count I**
**Failure to Register Voters in Violation of Section 8**
**of the National Voter Registration Act of 1993 (52 U.S.C. § 20507)**

90.     Plaintiffs rely herein upon all the paragraphs of this Complaint.

91.     H.B. 197 requires that ballots cast through April 28, 2020, count in Ohio's 2020 presidential primary election, H.B. 197 § 32(E)(1)–(2), but prohibits anyone who registered to vote after February 18, 2020, from participating in the election, *id.* § 32(C)(1)(a).

92.     The National Voter Registration Act of 1993 ("NVRA") applies to federal elections, such as Ohio's 2020 presidential primary election. *See, e.g.*, 52 U.S.C. §§ 20501(b)(1), 20502(1)–(2).

93.     Section 8(a)(1) of the NVRA requires that in elections for federal office the registration date be no earlier than 30 days prior to "the date of the election." *Id.* § 20507(a)(1);

*see also U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 376 (6th Cir. 2008) ("Section 8 of the NVRA [requires] state election officials must 'ensure that any eligible applicant is registered to vote in an election' whenever a valid voter registration form is . . . received by the appropriate state official no later than 30 days before the date of the election.").

94.     H.B. 197's restriction on registration is an ongoing violation of the NVRA occurring within 30 days of a federal election, allowing Plaintiffs to seek relief without providing prior notice. 52 U.S.C. § 20510(b)(3).

95.     This restriction will deprive thousands of eligible Ohio voters of their right to participate in the 2020 primary election and violates the clear mandate of the NVRA.

**Count II**
**Undue Burden on the Right to Vote Under the First and**
**Fourteenth Amendments of the U.S. Constitution Pursuant to 42 U.S.C. § 1983**

96.     Plaintiffs rely herein upon all the paragraphs of this Complaint.

97.     When considering challenges brought to state election laws and procedures, courts must weigh "'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

98.     H.B. 197—which was only signed into law on March 27, 2020—burdens the fundamental right to vote by creating multiple hurdles Ohio voters must navigate in the span of just weeks in order to cast a ballot by April 28.

99.     First, the Act requires the Secretary of State to provide registered voters who have not yet participated in the 2020 primary election with a postcard informing them of how they can

apply for vote-by-mail ballots; the Act does not allow for voters to be automatically mailed absentee ballot applications or absentee ballots. H.B. 197 § 32(C)(2). The OAEO estimates that the production, proof, and mailing of the postcard alone would take 2–3 weeks and then additional time to deliver to voters. And, because voters had previously been informed that the election has been moved to June 2, *see Directive 2020-06*, for many voters, the mailings may be a necessary educational piece to inform them of the new election date. But, by the time the mailing goes out, voters will be on a tight timeline to cast their ballots.

100.    Second, voters must obtain ballot applications either by printing the applications themselves or requesting their boards of elections to mail them applications. Because many voters do not own printers and places like libraries are closed in response to the COVID-19 crisis, the additional steps associated with obtaining absentee ballot applications and thereafter envelopes and stamps places a significant burden on voters. And, requesting that boards of elections send applications to voters adds another step and will take at least another 3–5 days out of the tight timeframe to vote.

101.    Third, once voters send in their ballot applications, they will be sent ballots *if* county boards determine that the applications are "valid". H.B. 197, § 32(C)(6). If there are any deficiencies in their applications, the county boards must notify voters and allow them to cure. H.B. 197 does not take this process into account, which, again, adds additional time to the voting process. *Id.* § 32(C)(5)(a).

102.    Fourth, voters must cast and send ballots and have their ballots postmarked by April 27, 2020, or drop them off at their boards of elections by 7:30 p.m. on April 28, 2020. *Id.* § 32(E)(1)–(2). Voters who do not receive their ballots in time to postmark them, cannot vote in the April 28 election.

103.    Under H.B. 197, registered Ohio voters who do not qualify under one of two narrow exceptions to cast in-person ballots cannot vote in person—therefore, voters who do not receive their mail absentee ballots prior to April 28, who have unreliable mail delivery, or for whatever reason, cannot complete the absentee process in time, cannot vote in the April 28 election. *See id.* § 32(D)(1).

104.    H.B. 197 requires voters to take a series of steps in order to exercise their fundamental right to vote. The Act does not provide enough time for voters to complete those steps. Election officials informed the Ohio General Assembly of this before H.B. 197 was adopted, but the legislature ignored the information before it.

105.    Election officials tasked with administering the election have repeatedly stated that their boards of elections need more time.

106.    There is no state justification for H.B. 197 that can justify the unconstitutional burden, either severe or substantial, placed on the ability of Ohioans to exercise their fundamental right to vote.

## **REQUEST FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully request that the Court enter an order:

(a)  Requiring that any qualified Ohio elector who submitted a voter registration application or updated their registration information between February 19, 2020, and 30 days prior to the day on which the 2020 primary election is set to conclude shall have their registration information processed and be permitted to vote in the 2020 primary election;

(b)  Requiring that, at least 21 days prior to the close of polls for the 2020 primary election, county boards of elections shall mail all registered electors who have not already voted

in the election a primary ballot for each party with candidates on the ballot, return postage pre-paid, with instructions to cast only one ballot and return the ballot in the official pre-paid postage envelope;

(c) Allowing any elector who has not received a mail absentee ballot at least 14 days prior to the close of polls for the 2020 primary election to submit a request for such a ballot to their local board of election by phone;

(d) Allowing any elector who qualified for in-person voting pursuant to H.B. 197 § 32(D)(1), and who received a mail absentee ballot, to vote a regular, in-person ballot if they bring their unmarked absentee ballot to the local board of elections simultaneously;

(e) Requiring that any elector who cannot or does not receive their mail absentee ballot in time to cast it by the postmark date for mail absentee ballots shall be permitted to vote a provisional ballot in person at their local board of elections;

(f) Requiring that electors be permitted to cure any deficiencies in their provisional ballots or absentee ballot identification envelopes by mail, phone, or email up through the day prior to the day the official canvass is required to begin;

(g) Setting a date for the 2020 primary election to conclude that would allow election officials sufficient time to provide orderly notice to electors and administer the election in the manner provided for herein;

(h) Requiring Defendant LaRose to issue a directive notifying Ohio's eighty-eight county boards of elections the aforementioned requirements; and

(i) Requiring Defendant LaRose to educate and inform electors: about the timeline and process for voting in the upcoming election; and that if they did not receive absentee

24

ballots in the mail they may contact their boards of elections and (a) confirm whether they have been sent a ballot, and (2) if they have not received a ballot, request a ballot by phone.

Dated: March 31, 2020

Respectfully submitted,

/s/ Naila S. Awan

Ezra D. Rosenberg*
Jon M. Greenbaum*
Pooja Chaudhuri*
Jacob Conarck*
Lawyers' Committee for Civil Rights Under Law
1500 K Street, NW, Ste. 900
Washington, D.C. 20005
(202) 662-8600
erosenberg@lawyerscommittee.org
jgreenbaum@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org
jconarck@lawyerscommittee.org

Freda J. Levenson (0045916)
ACLU of Ohio Foundation
4506 Chester Avenue
Cleveland, Ohio 44103
(216) 472-2220
flevenson@acluohio.org

Naila S. Awan, Trial Attorney (0088147)
Brenda Wright*
Emerson Gordon-Marvin*
Dēmos
80 Broad St, 4th Floor
New York, NY 10004
(212) 485-6065
nawan@demos.org
bwright@demos.org
egordonmarvin@demos.org

Chiraag Bains*
Adam Lioz*
Dēmos
740 6th Street NW, 2nd Floor
Washington, DC 20001
(202) 864-2746
cbains@demos.org
alioz@demos.org

David J. Carey (0088787)
ACLU of Ohio Foundation
1108 City Park Avenue, Suite 203
Columbus, Ohio 43206
 (614) 586-1972
dcarey@acluohio.org

*Attorneys for the Plaintiffs*

*motions for admission* pro hac vice
*forthcoming*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2020, I served the foregoing on counsel for Defendant

via e-mail as indicated below:

Bridget C. Coontz
Section Chief, Constitutional Offices
Ohio Attorney General
bridget.coontz@ohioattorneygeneral.gov

Julie Pfeiffer
Assistant Section Chief, Constitutional Offices
Ohio Attorney General
julie.pfeiffer@ohioattorneygeneral.gov

*/s/ Naila S. Awan*_____
Naila S. Awan, Trial Attorney (0088147)
Dēmos
80 Broad St, 4th Floor
New York, NY 10004
(212) 485-6065
nawan@demos.org