## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**League of Women Voters
of Ohio, *et al.*,**

       **Plaintiffs,**                           **Case No. 2:20-cv-1638**

       **v.**                                **Judge Michael H. Watson**

**Frank LaRose,**                          **Magistrate Judge Deavers**

       **Defendant.**

## OPINION AND ORDER

Plaintiffs sue Ohio Secretary of State Frank LaRose ("Secretary LaRose") and seek an emergency temporary restraining order ("TRO") to prevent Ohio's primary election from taking place in the time and manner prescribed by House Bill 197 ("H.B. 197"). Mot., ECF No. 4. The State of Ohio, the Ohio Democratic Party ("ODP"), and the Ohio Republican Party ("ORP") moved for, and were granted, leave to intervene as Defendants. Order, ECF No. 38. Likewise, the Libertarian Party of Ohio ("LPO") moved for, and was granted, leave to intervene as a Plaintiff. *Id.* LPO moves for a TRO or preliminary injunction as well.[1] ECF No. 31. The Court granted Honest Elections Project's motion to file an amicus

---

[1] The Court has reviewed LPO's reply brief, ECF No. 53, but does not consider the arguments (not to mention new claims) raised for the first time in that brief.

brief, ECF No. 25, and the Court now grants Disability Rights Ohio's ("DRO")

motion to file an amicus brief, ECF No. 54-1.[2]

## I.    FACTS[3]

### A. Background

Ohio's primary election was scheduled for March 17, 2020.  On March 9,

2020, Governor Mike DeWine declared a state of emergency in response to the

spread of COVID-19.  Within a matter of days, the World Health Organization

declared COVID-19 a pandemic, President Donald Trump declared the COVID-

19 outbreak a national emergency, and, in Ohio, all schools were closed,

gatherings limited, and restaurants and bars closed for dining-in.

Confusion ensued on March 16, 2020, the day before the election, after

Governor DeWine announced that it was unsafe to hold in-person voting for the

primary election.  A lawsuit was filed in the Franklin County Court of Common

Pleas seeking an emergency delay of the election, but the request was denied

later that same day.  Ultimately, Ohio's Department of Health Director Dr. Amy

Acton issued an order prohibiting polling locations from operating on March 17,

2020, due to the COVID-19 pandemic.  Thereafter, Secretary LaRose issued

---

[2] To the extent DRO seeks to argue a new claim, such as a claim that H.B. 197 violates the ADA, that is not included in Plaintiffs' Amended Complaint, the Court does not consider it.

[3] All relevant facts are taken from Plaintiffs' Amended Complaint, ECF No. 4, unless stated otherwise.

Directive 2020-06, which suspended in-person voting in the primary election until June 2, 2020.  *See* LaRose Ex 3, ECF No. 44-3.

On March 17, 2020, two lawsuits were filed in the Ohio Supreme Court and Franklin County Court of Common Pleas challenging Secretary LaRose's authority to issue that Directive.  *See State ex rel. Ohio Democratic Party v. LaRose*, No. 2020-0388 (Ohio Sup. Ct. Mar. 17, 2020); *Reardon v. LaRose*, No. 20-cv-2105 (Franklin Cty. Ct. Com. Pl. Mar. 17, 2020)[4].  The case filed in the Supreme Court requested that the date of the primary be re-set for an earlier time and that voting be only through the mail.[5]

The Ohio General Assembly became involved and on March 25, 2020, unanimously passed H.B. 197, a comprehensive COVID-19 bill, which also established April 28, 2020, as the deadline by which absentee ballots must be received.  Secretary LaRose rescinded his prior directive, and on March 27, 2020, Governor DeWine signed the bill into law.  It is that bill that is challenged in this lawsuit.

Specifically, H.B. 197, Section 32, part of an overarching COVID-19 relief bill, implements, as relevant, the following for completing voting in Ohio's primary election:

---

[4] Appeal voluntarily dismissed on March 31, 2020.  *See Reardon, et al. v. LaRose*, No. 20AP-160 (10th Dist. Ohio Mar. 31, 2020).

[5] ODP voluntarily dismissed its lawsuit in the Ohio Supreme Court after H.B. 197 was passed.  ODP Resp. 4 n.1, ECF No. 48; *see also State ex rel. Ohio Democratic Party v. LaRose*, 202 Ohio LEXIS 762, (Sup. Ct. Ohio Mar. 27, 2020) (Order granting ODP's application for dismissal).

- Voids Secretary LaRose's Directive 2020-06, § 32(A);
- Prohibits the processing of voter registration applications submitted after February 18, 2020, § 32(B)(3);
- Permits eligible voters to apply for an absentee ballot up through noon on April 25, 2020 (with exceptions for voters under O.R.C. § 3509.08) and votes cast by absentee mail ballot[6] postmarked by April 27, 2020, and received by May 8, 2020[7], to be counted, § 32(C), (E)
  - Defines eligible electors as those individuals who have not already cast a ballot in the March 17, 2020 primary election or other special election, and who were registered to vote as of February 18, 2020, § 32(C)(1)(a); and
- Requires Secretary LaRose to send out postcards to registered voters notifying them how to apply for and submit an absentee ballot and the deadlines for doing so.  § 32(C)(2).[8]

H.B. 197, Section 32.

Plaintiffs allege that, by prohibiting the processing of voter registration

applications after February 18, 2020, H.B. 197 violates the National Voter

Registration Act of 1993 ("NVRA"), which requires registration be made available

---

[6] With very limited exceptions for in-person voting.  § 32(D)(1).
[7] With limited exceptions.  § 32(E)(2)–(3).
[8] Currently Ohio Revised Code § 3509.03 requires applicants to "make a written application" for absentee ballots.  Plaintiffs allege that this requirement will disproportionately burden voters who do not have means for or access to printers, envelopes, or stamps.  However, the Court takes judicial notice of the FAQ section of the Secretary of State's website which does not require a pre-printed form, as long as a written submission of a request for an absentee ballot includes the required information. It also permits calling your county board of elections and requesting that an absentee ballot application be sent to you.  *See* Ohio Secretary of State Website, "I don't have a printer. Can I request a vote-by-mail ballot?;"
*https://www.sos.state.oh.us/elections/voters/2020-primary-frequently-asked-questions/*, last visited April 1, 2020.  It still appears, however, that the voter is responsible for postage required to mail-in the absentee ballot application.

thirty days before any election for federal office.  Plaintiffs also argue that H.B.

197 creates an unconstitutional burden on the right to vote, in violation of the

First and Fourteenth Amendments.

Plaintiffs seek a temporary restraining order that mandates the following:

(1)Any qualified Ohio elector who submitted a voter registration application or updated their registration information between February 19, 2020, and 30 days prior to the day on which the 2020 primary election is set to conclude shall have their registration information processed and be permitted to vote in the 2020 Primary Election;

(2)At least 21 days prior to the close of polls for the 2020 primary election, county boards of elections shall mail all registered electors who have not already voted in the election a primary ballot for each party with candidates on the ballot, return postage pre-paid, with instructions to cast only one ballot and return the ballot in the official pre-paid postage envelope;

(3)Any elector who has not received a mail absentee ballot at least 14 days prior to the close of polls for the 2020 primary election may submit a request for such a ballot to their local board of election by phone;

(4)Any elector who qualifies for in-person voting pursuant to H.B. 197, § 32(D)(1), and who received a mail absentee ballot, can vote a regular in-person ballot if they bring their absentee ballots to their local board of election;

(5)Any elector who does not receive their mail absentee ballot prior to the postmark date for mail absentee ballots shall be permitted to vote a provisional ballot in person at their local board of election;

(6)Any elector will be permitted to cure any deficiencies in their provisional ballots or absentee ballot identification envelopes by mail, phone, or email up through the day prior to the day the official canvass is required to begin;

(7)The conclusion of the 2020 primary election be set at such a time as will allow election officials to provide orderly notice to electors and administer the election in the manner provided for herein;

(8) Defendant LaRose to issue a directive notifying Ohio's eighty-eight county boards of elections of the aforementioned requirements; and

(9) Defendant LaRose to educate and inform electors about: the timeline and process for voting in the upcoming election; and that if they did not receive an absentee ballot in the mail they may contact their boards of elections and (a) confirm whether they have been sent a ballot, and (2) if they have not received a ballot, request a ballot by phone.

TRO Mot. 1–2, ECF No. 4.

Furthermore, as noted above, the Court has granted permission for the State of Ohio, the ODP, the LPO, and the RPO to intervene in this action. The Court also granted Honest Elections Project's and DRO's motions to file amicus briefs. While the Court does not set forth each of their arguments herein, it has considered everything submitted by these parties in coming to this Opinion and Order. The Court will discuss certain of their arguments, where appropriate, *infra*.

## II.    STANDARD OF REVIEW

Plaintiffs seek injunctive relief pursuant to Federal Rule of Civil Procedure 65. In determining whether to grant such relief, the Court considers four factors: (1) whether the movant has established a substantial probability of success on the merits; (2) whether the movant would suffer irreparable harm in the absence of an injunction; (3) whether an injunction would substantially harm third parties; and (4) whether an injunction would serve the public interest. *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010). The factors are not

prerequisites; rather, they must be balanced in weighing the equities involved. *Capobianco, D.C. v. Summers*, 377 F.3d 559, 561 (6th Cir. 2004).

## III.    ANALYSIS

As a preliminary matter, no party has disputed Plaintiffs' standing in this case, but the Court has an independent duty to ascertain whether the plaintiffs in a case have standing. The Court has reviewed Plaintiffs' standing argument and is satisfied that standing exists to assert these claims. Accordingly, the Court turns to an analysis of the TRO factors.

### A. Likelihood of Success on the Merits

#### 1. The National Voter Registration Act of 1993

Plaintiffs first allege that H.B. 197 violates the NVRA's thirty-day registration requirement by prohibiting boards of elections from processing any voter registration applications received after February 18, 2020. Pls.' Mot. 13, ECF No. 4 (citing 52 U.S.C. § 20507(a)(1))[9].

ODP agrees with Plaintiffs and argues that by establishing April 28, 2020, as the last day for voting, the Ohio legislature effectively set a new date for Ohio's primary election. ODP Resp. 10, ECF No. 48. ODP advances their argument under both the NVRA and Article V, Section 1 of the Ohio Constitution, which largely mirrors the NVRA's requirements and establishes that all citizens

---

[9] Formerly codified at 42 U.S.C. §§ 1973–1973gg-10.

over eighteen years old, who have "been registered to vote for thirty days, ha[ve] the qualifications of an elector, and [are] entitled to vote at all elections."

LPO echoes Plaintiffs' and ODP's arguments and adds that H.B. 197 violates Article I, § 4 of the United States Constitution by interfering with Congress's authority to regulate the time and manner of federal elections. LPO Mot. 10–11, ECF No. 31.

The State of Ohio contends that Plaintiffs are operating under the faulty premise that the Ohio 2020 primary election was moved to April 28, 2020.[10] State of Ohio Resp. 8, ECF No. 52. Instead, the State of Ohio argues that the primary election was not cancelled on March 16, 2020, only the polling locations for in-person voting the next day were closed due to a public health crisis. *Id.* at 9. Likewise, the State of Ohio argues that H.B. 197 did not cancel or reset the 2020 primary election to April 28, 2020, it just extended the deadline by which already registered voters could cast an absentee ballot. *Id.* In support, they argue that H.B. 197 does not establish a new election date because all votes already cast in the 2020 primary election up and through March 16, 2020, are being held and will be counted. *Id.* (citing H.B. 197 § 32(B)). Thus, the State of Ohio argues, this is not "a 're-do' of the primary election" that requires a re-opening of voter registration. *Id.* at 10. Rather, this is an "election modification" in that Secretary LaRose is "accept[ing] as valid everything that transpired before

---

[10] Secretary LaRose advances similar arguments. *See* Secretary LaRose Memo in Opp. 14–18, ECF No. 44.

an election emergency arose and simply authoriz[ing] additional methods of, or time for, voting."  *Id.* at 11 (quoting Morley, Michael T., Symposium: Election Emergencies: Voting in the Wake of Natural Disasters and Terrorist Attacks, 67 Emory L.J. 545, 548–50 (2018)) (comparing an election modification, such as here, with an election cancellation, which entirely nullifies the originally scheduled election with the expectation that a new one will be held at a later date).

"In 1993, Congress passed the NVRA as a measure meant to reinforce the right of qualified citizens to vote."  *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 376 (6th Cir. 2008) (citation omitted).  "The NVRA reflects the view of Congress that the right to vote 'is a fundamental right,' that government has a duty to 'promote the exercise of that right,' and that discriminatory and unfair registration laws can have a 'damaging effect on voter participation' and 'disproportionately harm voter participation by various groups, including racial minorities.'"  *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334 (4th Cir. 2012) (citations to former code provision omitted).  Section 8(a)(1) of the NVRA provides that "each State shall . . . insure that any eligible applicant is registered to vote in an election . . . not later than . . . 30 days . . . before the date of the election."  52 U.S.C. § 20507(a)(1).[11]  Under the NVRA, "election" means "a

---

[11] "A person is registered to vote for purposes of Section 8 when 'the valid voter registration form of the applicant is: (1) 'submitted to the appropriate State motor vehicle authority' in accordance with 52 U.S.C. § 20504 (registration by application simultaneous with an application for a motor vehicle driver's license); (2) submitted by postmarked mail in accordance with 52 U.S.C. § 20505; (3) 'accepted at the voter

general, special, primary, or runoff election." *See* 52 U.S.C. § 20502 (terms synonymous with meanings set forth in 52 U.S.C. § 30101).

Here, Plaintiffs' arguments under the NVRA are unlikely to succeed on the merits because the cases upon which Plaintiffs rely are distinguishable, and Ohio has complied with the NVRA's requirements.

Ohio's extension of its absentee ballot deadline is not comparable to the cases upon which Plaintiffs rely. For example, in *Kemp*, there was a special runoff election scheduled more than thirty days after the original voter registration deadline established for the general election. *See Georgia St. Conf. of the NAACP v. Kemp*, No. 1:17-cv-1397, Order on Preliminary Injunction, Doc. 29 (N.D. Ga. May 4, 2017). The court in that case found that the failure to permit voters to register up until thirty days before the runoff election violated the NVRA. But the runoff election in that case was a new election, with new candidates and different ballots, thereby triggering the NVRA's registration provision.

In *Arizona Democratic Party v. Reagan*, the district court found that the Arizona Secretary of State's failure to account for a federal holiday (Columbus Day) in establishing its voter registration deadline for the general election violated the NVRA's thirty-day requirement because otherwise eligible voters were unable

---

registration agency' in accordance with 52 U.S.C. § 20506 (in-person registration at registration sites or government offices designated by each state); or (4) otherwise 'received by the appropriate State election official.' 52 U.S.C. § 20507(a)(1)(A) — (D)." *Ariz. Democratic Party v. Reagan*, No. CV-16-03618, 2016 U.S. Dist. LEXIS 153431, at *41 (D. Az. Nov. 3, 2016) (citation omitted).

to submit their applications when the post office was closed for the holiday.  2016 U.S. Dist. LEXIS 153431, at **40–47.

The State of Ohio and Secretary LaRose correctly distinguish between an election modification, which we have here, and an election cancellation.  COVID-19 presented Defendants with an unprecedented situation where in-person voting was no longer safe because of a global-health crisis.  But unlike in *Kemp* or *Reagan*, there is not a new election scheduled for April 28, 2020.  Rather, this is just a modification and extension of the date by which voters—who were otherwise eligible and prepared to cast their votes in-person on March 17, 2020—can submit their votes, primarily by absentee ballot.  Under Ohio law, eligible persons interested in voting in Ohio's March 17, 2020 primary were required to register by February 18, 2020.  That February deadline came and went before any change was made to the March 17, 2020 in-person voting.  In other words, had in-person voting taken place on March 17, 2020, people who had not registered to vote by February 18, 2020, would not have been able to show up that day and cast a vote.  As such, the State complied with the NVRA in granting registration up to thirty days before "the election."

House Bill 197 does not change the date of "the election"; it merely extends the deadline for submitting absentee ballots for the March 17, 2020 election until April 28, 2020, and established that only certain people could submit their votes in person on April 28, 2020.  By its own terms, it refers to the election as the "March 17, 2020 primary election."  *E.g.*, H.B. 197 § 32(B)(1), (2),

(C)(1).  It provides methods for voters "who ha[d] not already cast a ballot in the March 17, 2020, primary election" to vote "in that election." *Id.* at (C)(1). Because H.B. 197 does not establish a new election or new election date, Ohio did not violate the NVRA by leaving the cut-off for voter registration as February 18, 2020. *Cf.* Morley, 67 Emory L.J. at 554 (discussing how New York employed a similar election modification process after the September 11, 2001 terrorist attack in that it did not extend the voter registration deadline but did extend the deadline by which already registered voters could request an absentee ballot, although this action appears not to have been challenged under the NVRA).

Finally, although the Court does not rely on the intent of the statute, the Court finds that this decision is not contrary to the purpose of the NVRA. Granting Plaintiffs' requested relief would not protect the ability of individuals to register, but, instead, would confer an extra benefit to a group of people who had missed their window of opportunity to register by February 18, 2020, before any change was made by the Ohio legislature.

For these reasons, the Court finds that Plaintiffs are unlikely to succeed on the merits of their NVRA claim.  For the same reasons, the Court finds LPO is unlikely to succeed on its argument that the Ohio Legislature has exceeded its authority and violated Article I, § 4 of the United States Constitution by keeping the registration date February 18, 2020.

## 2.  First and Fourteenth Amendments

Plaintiffs also contend that the Ohio Legislature's changes to the voting procedures for the March 17, 2020 primary election amount to an unconstitutional burden on the right to vote in violation of the First and Fourteenth Amendments.

Voting is a fundamental and precious right, and "[o]ther rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).  However, "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983) (internal quotation marks and citation omitted).  "To achieve these necessary objectives, States have enacted comprehensive and sometimes complex election codes.  Each provision of these schemes . . . affects—at least to some degree—the individual's right to vote . . . ." *Id.* "Nevertheless, the state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." *Id.*  Indeed, voting regulations do not automatically trigger strict scrutiny even when they impact the right to vote because, as the Supreme Court has instructed, "states 'may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder.'" *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 585 (6th Cir. 2006) (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997); citing *Storer v. Brown*, 415 U.S. 724, 730 (1974)).

The Court must determine the nature of the burden the regulation places on voters when setting the standard of review to apply. "While a rational basis standard applies to state regulations that do not burden the fundamental right to vote, strict scrutiny applies when a state's restriction imposes 'severe' burdens." *NE Ohio Coalition for Homeless v. Husted*, 696 F.3d 580, 592 (6th Cir. 2012) (citing *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012)). If, however, the Court finds that Plaintiffs' right to vote is burdened, but not "severely" burdened, the Court analyzes Plaintiffs' claim under the flexible *Anderson-Burdick* standard.

Under the *Anderson-Burdick* test,

A court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson*, 460 U.S. at 789). "There is no 'litmus test' to separate valid from invalid voting regulations; courts must weigh the burden on voters against the state's asserted justifications and 'make the 'hard judgment' that our adversary system demands.'" *Obama for Am.*, 697 F.3d at 429 (quoting *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 190 (2008) (Stevens, J., announcing the judgment of the Court)). "However slight that burden may appear . . . it must be justified by relevant and legitimate

state interests 'sufficiently weighty to justify the limitation.'" *Crawford*, 533 U.S. at 191 (citation omitted).

### a. Burden on the Right to Vote

Under the *Anderson-Burdick* test, the Court must first "consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Anderson*, 460 U.S. at 789.

Plaintiffs allege that H.B. 197 provides insufficient time to effectively conduct voting in Ohio. In support, they point to Secretary LaRose's own statements to the Ohio General Assembly, which advocated for a June 2, 2020 deadline. *See* Secretary LaRose Letter to Legislatures, dated March 21, 2020, Am. Compl. ¶ 44, ECF No. 5.

Plaintiffs also allege that the process for extending voting primarily through absentee ballots is unnecessarily complicated and cumbersome, thereby disenfranchising or discouraging voters from participating. For example, H.B. 197 requires eligible voters to correctly fill out an absentee ballot application (either by printing it out or writing it down on some sort of paper); mail it to their local board of elections using their own stamps and envelopes; wait for their application to be processed; receive their ballot in the mail; fill the ballot out correctly; and mail the ballot back so that it is postmarked by April 27, 2020. All of this must take place for millions of Ohio voters.

Plaintiffs contend that this process in this tight timeframe "leaves no room for delay" because there may not be time to correct any errors in the applications in time to postmark absentee ballots by April 27, 2020, if the initial absentee ballot application requests are denied. Further, they argue, the length of this process could be compounded by delays at the post office or restrictions in place because of the COVID-19 pandemic, resulting in some voters being unable to postmark their ballots in time to be counted. Plaintiffs also argue that the mail-in only option burdens voters' rights to vote, especially those who are economically disadvantaged, by requiring voters to access a printer to print off the official ballot request form[12] and to obtain postage for the absentee ballot request. Additionally, Plaintiffs allege that the in-person voting options provided for in H.B. 197 are insufficient and too narrowly drawn, thereby disenfranchising voters who are unable to complete the absentee ballot process or who would otherwise prefer to vote in person. Plaintiffs argue that all of the above-described aspects of H.B. 197 make it a severe burden on the right to vote.

The Court finds H.B. 197 does not impose a severe burden on the right to vote. First, voters had various opportunities to vote, both by mail and in person, prior to late March 16, 2020, when the polls were closed.

Second, under H.B. 197, certain voters can still vote in person on April 28, 2020.

---

[12] As noted just above and again, *infra*, voters need not possess a printer to request an absentee ballot.

Third, all voters who have not yet voted and who cannot vote in person on April 28, 2020, can still vote by requesting and submitting a mail-in ballot. Plaintiffs contend that the deadline for doing so, and the requirements of printing out the ballot request form and obtaining proper postage to submit the ballot request, unduly burden the right to vote.

The Court recognizes that due to the current COVID-19 pandemic, which has required many places of business (including libraries and other places where Plaintiffs may wish to print a ballot request form) to close, voters may face a difficulty submitting the ballot request form. But, Secretary LaRose has already taken steps to make submission as easy as possible by, for example, permitting voters to submit a ballot request on any piece of paper containing the required information instead of requiring voters to submit the official ballot request form. Further, voters can request the absentee ballot application by calling their county board of elections.

The requirement that voters affix a stamp to their ballot application is no more than a minimal burden as stamps are available at multiple locations that remain open during the Governor's stay-at-home order, including grocery stores. Those who do not wish to leave their homes to purchase stamps can purchase them online. And, contrary to Plaintiffs' assertion, Secretary LaRose's mailing of informative postcards does not cause any delay—voters need not wait to receive the postcard; they are free to begin requesting their absentee ballots prior to receiving that postcard.

Still, given that H.B. 197 sets the voting deadline at April 28, 2020, the bill creates a tight deadline to accomplish the proper request and submission of a ballot.  The Court therefore concludes that H.B. 197 creates, *at most*, a modest burden on the right to vote and will be analyzed under the *Anderson-Burdick* framework.  It is not a severe burden subject to strict scrutiny.

### b. The State's Interests

The Court agrees with Defendant and Intervenor Defendants that the State's interests outweigh the burdens caused by the generally applicable, nondiscriminatory procedures laid out in H.B. 197.

Certainly, the State has an interest in curbing the global COVID-19 pandemic.  The prohibition of gatherings of large amounts of people is central to the President's guidelines on social distancing that are effective until April 30, 2020, and the Governor's stay-at-home order for the State of Ohio, which has been extended to May 1, 2020.  Accordingly, the State has a strong interest in limiting in-person voting during this period of crisis.  Limiting in-person voting to only those who are disabled or unable to receive mail is a justifiable burden on the rights of those who would otherwise prefer to vote in person[13] but can vote by mail when weighed against the State's interest in preventing its hospitals from

---

[13] The Court also notes the inconsistency between Plaintiffs arguing, on the one hand, that the inability to vote in person is an unconstitutional burden on their right to vote and, on the other, that some voters will be unconstitutionally burdened by having to potentially expose themselves or their family members to the virus at a post office in order to obtain postage to mail an absentee ballot application.

exceeding critical capacity and preventing as many illnesses and deaths from COVID-19 as possible. It also prohibits the disenfranchisement of persons who are categorically unable to vote by mail due to disability or the inability to receive mail.

Further, Secretary LaRose, the State of Ohio, and ODP have adequately explained the justifications for requiring voters to submit an application for an absentee ballot rather than mailing out ballots directly to voters. As Secretary LaRose explained, he is required by law to properly verify a voter's identity and a voter's signature—whether submitted absentee by mail, early in-person, or at the polls on election day—as part of that verification process. LaRose Resp. 22, ECF No. 44 (citing R.C. 3505.18; 3509.03(B)(5)). Thus, allowing a person to request an absentee ballot over the phone or online without an accompanying signature undermines that important voter verification safeguard. *Id.*

Moreover, this is a primary election, and voters in Ohio can only vote in one primary. If voters did not request a particular ballot, they would not be able to register with one of the political parties. Moreover, Secretary LaRose would have to mail up to four separate ballots to every voter.[14] It would require a massive undertaking to print and mail so many ballots to voters, not to mention the confusion it would cause given that voters are only allowed to submit one of

---

[14] The Court agrees with the State of Ohio's footnote 10—Ohio's primary requires different mechanics than the states Plaintiffs seek to emulate.

the ballots.[15]  Mailing up to four ballots to each voter would inevitably result in the disenfranchisement of some voters who would erroneously return more than one ballot and not have their vote counted at all.  Given how easy Secretary LaRose is making it to request an absentee ballot (the ability to request it online or via phone, the ability to send multiple ballot requests within the same envelope, and not requiring the request to be on the official form), the State's interest in sending only one ballot to each voter outweighs any burden that requesting the ballot[16] imposes on voters.

Furthermore, the State of Ohio argues that H.B. 197's postcard process is more efficient and streamlined than the process outlined in Secretary LaRose's Letter to the Legislature and, thus, is manageable.  *See* State of Ohio Resp. 19–20, ECF No. 52; *see also* Secretary LaRose Resp. 26–27, ECF No. 44 and Grandjean Dec., ECF No. 44-2 (explaining why mailing an absentee ballot application to each registered voter in time for the April 28, 2020 deadline is unworkable).  Indeed, Secretary LaRose's response indicates that he will be able to carry out the process established by H.B. 197 and, conversely, contends that

---

[15] Plaintiffs' arguments are inconsistent.  They argue both that sending four separate ballots will not confuse voters, while arguing elsewhere that having to fill out an absentee ballot request as a well as a ballot will confuse voters.

[16] ODP argues the Court should require Secretary LaRose to include a ballot request form at the bottom of the postcard that H.B. 197 requires him to mail out.  ODP's suggestion was filed on April 1, 2020, after the Court was informed on the March 31, 2020, teleconference that the postcards were already being printed.  It is simply not feasible to grant ODP's requested relief as the postcards have already been printed and requiring a reprint would, among other difficulties, cause additional delay on an already tight timeline.

all of Plaintiffs' requested relief is unworkable.[17]  *See* Secretary LaRose Resp.
10, 19–25, ECF No. 44; Grandjean Dec., ECF No. 44-2.

The compressed timeframe for the completion of absentee voting does
pose a burden on voters.  Those who request the ballot by mail will have to wait
for their request to reach the county board of elections, then wait for the ballot to
be mailed back to and reach the voter, and then, the voter must fill out the ballot
and have it postmarked in time to be counted.  Any delay on the part of the voter,
county board of elections, or the postal service could result in the voter's ballot
not being counted.

Nonetheless, at the time the State enacted H.B. 197, this timeframe was
justified, and it remains so.  Secretary LaRose had advocated for a June 2, 2020
voting deadline, but ODP requested April 28, 2020, specifically to permit it to
send delegates to the Democratic National Convention ("DNC").  ODP made the
same argument in favor of the April 28, 2020 deadline in this litigation before the
DNC delayed its convention on April 2, 2020.  Similarly, LPO argued that voting
must conclude by May 12, 2020, in order for LPO to send delegates to its
national convention.  RPO likewise argued against extending the voting deadline.
And, ODP has informed the Court that the delay of the DNC does not change

---

[17] Further, the Court notes that in Secretary LaRose's letter to the Ohio General
Assembly, in which he advocated for a June 2, 2020 voting deadline, he explained that
he could not complete *his* proposed plan earlier than June 2, 2020.  But his proposed
plan was different than H.B. 197.

ODP's position on this matter because the delay does not impact the rules or deadlines for certifying state party delegations.

The State of Ohio certainly has an interest in concluding voting early enough to permit the major political parties to send delegates to their national conventions, and this interest outweighs the burden that the tight timeframe imposes on Ohio voters. ODP has explained that, notwithstanding the fact that the DNC has been rescheduled, there remains a deadline of June 20, 2020, for state parties to certify to the DNC's Secretary the state party's delegation to the convention. ODP requires that the election be at least eight weeks prior to that June 20, 2020 deadline in order to meet the same.

The fact that other states have afforded more voting opportunities to their voters, in this case by extending their primaries until June 2020 in response to the COVID-19 pandemic, is not persuasive evidence undermining Ohio's interest in concluding voting by April 28, 2020. There is no evidence regarding whether the political parties in those other states have adopted delegate selection plans like ODP's that require approximately eight weeks of post-primary actions, nor is it at all clear whether ODP could have a different delegate selection plan approved in order to accommodate a later deadline for submitting absentee ballots while still meeting the June 20, 2020 DNC certification deadline.

LPO and RPO offer similar arguments in support of concluding voting quickly, and the Court finds them equally applicable to the State of Ohio's interest in having the deadline on April 28, 2020, notwithstanding the DNC's change in

date. In particular, the Court rejects LPO's supplemental argument that the Court no longer needs to keep the April 28, 2020, deadline but should establish a deadline by May 12, 2020. LPO did not address DPO's argument that the certification deadline has not changed for the DNC.

Finally, given the upheaval that the change to the voting process has already created, the Court agrees that the State has a strong interest in minimizing disorder and easing the burdens on county boards of elections. By permitting the boards of elections to continue to use the absentee-balloting system already in place and changing only the deadline for accepting those ballots, H.B. 197 furthers that interest. State of Ohio Resp. 15, ECF No. 52 (citing *Mays v. LaRose*, No. 19-4112, 2020 U.S. App. LEXIS, at ** 18–21 (6th Cir. Mar. 3, 2020).

Plaintiffs cite to *Fla. Dem. Party v. Scott*, 215 F. Supp. 3d 1250 (N.D. Fla. 2016) and *Ga. Coal. for the People's Agenda, Inc. v. Deal*, 214 F. Supp. 3d 1344 (S.D. Ga. 2016) to support their argument that "federal courts have moved similar election deadlines that were rendered burdensome by emergencies." Mot. 18, ECF No. 4. Those cases do not persuade the Court that Plaintiffs in this case are entitled to relief.

In *Scott*, the timing of a hurricane created an emergency that resulted in over a hundred thousand people who were likely to register in the final week of voter registration being evacuated. 215 F. Supp. 3d at 1257. This left those voters "foreclosed from the only methods of registering to vote." *Id.* The court in

*Scott* found that this created a severe burden on the right to vote because some people were unable to register, and, therefore, "categorically" denied the right to vote. *Id.* There is no such categorical denial of the right to vote here. Plaintiffs have alleged that there could be timing or logistical issues that make voting more challenging than it might otherwise be, but there is not even an allegation of a broad, categorical denial of the right to vote.

*Deal* provides very little in the way of persuasive authority.[18] That case also dealt with a mandatory evacuation caused by a hurricane. 214 F. Supp. 3d at 1345. This resulted in the local board of elections office being closed for the last few days of the registration window. *Id.* Despite this, the state declined to extend the registration deadline. *Id.* The court noted that it "harbor[ed] significant reservations concerning the ultimate merits of Plaintiffs' claims" but nevertheless concluded that they had established a sufficient likelihood of success on the merits to warrant injunctive relief. *Id.* The court did not reference *Anderson-Burdick*, opine on the level of the burden on the plaintiffs' voting rights, or engage in a detailed analysis of why the state's interest was insufficient to outweigh that burden.

In sum, the Court finds that the State of Ohio's interests outweigh the burden on voting rights caused by H.B. 197's various relevant provisions such

---

[18] This is perfectly understandable considering the court there was facing an emergency situation and issued an opinion the same day oral argument was held.

that H.B. 197 is not an unconstitutional burden on the right to vote in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

### 3. Poll Tax

LPO, in one sentence of its motion, suggests that H.B. 197 is an "impermissible poll tax in violation of the Twenty-Fourth Amendment and the Fourteenth Amendment Equal Protection Clause."[19] LPO Mot. for TRO 10, ECF No. 31 (citing *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663 (1966)). LPO did not attempt to develop this argument, and neither Defendant responded to it. Nevertheless, the Court has considered the issue and finds that, to the extent obtaining a stamp is a "restriction on the right to vote," it is not "unrelated to voter qualifications." *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 189 (2008). Instead, it is the type of "evenhanded restriction[] that protect[s] the integrity and reliability of the electoral process itself" that satisfies *Harper. See id.* at 189–90 (quoting *Anderson*, 460 U.S. at 788, n.9); *see* LaRose Resp. 22, ECF No. 44 (citing R.C. 3505.18; 3509.03(B)(5) (explaining that a signature is needed to protect against voter fraud).

### B. Irreparable Harm

If Plaintiffs are correct that some people will be unable to have their votes counted because of the voting procedures laid out in H.B. 197, the harm they would suffer would be irreparable. However, this alleged harm is speculative and

---

[19] LPO's lack of development of its poll tax argument is not rescued by its more detailed reply (after Defendants did not even address LPO's motion).

is outweighed by the other three factors the Court considers when ruling on the motion for a temporary restraining order.

## C. Harm to Third Parties

As shown by Intervenors' motions, Plaintiffs' request to postpone the deadline for voting in the March 17, 2020 primary yet again could cause harm to both LPO and ODP. LPO contends that it will be prevented from participating at its convention if voting does not conclude by, at the latest, May 12, 2020. ODP argues that it could be prevented from participating in the DNC if voting is extended beyond the currently scheduled date of April 28, 2020. Accordingly, the Court finds that at least some of Plaintiffs' requested relief would cause harm to third parties.

## D. Public Interest

The public has an interest in a free and fair election. The public also has an interest in avoiding further voter confusion. Because Plaintiffs are unlikely to succeed on the merits of their claims and because further changes to the election procedure could cause significant additional voter confusion, the Court finds that the public interest factor weighs against granting Plaintiffs their requested relief.

The Supreme Court has cautioned that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam). The Sixth Circuit has previously found that "the difficulty in altering the

ballot printing and distribution at this late date . . . weighs heavily against an injunction." *Estill v. Cool*, 295 F. App'x 25, 27 (6th Cir. 2008) (ballot printing and distribution was scheduled to begin the day after the Sixth Circuit issued its opinion, nineteen days after this Court denied the motion for a preliminary injunction); *see also SEIU Local 1 v. Husted*, 698 F.3d 341, 345 (6th Cir. 2012) ("As a general rule, last-minute injunctions changing election procedures are strongly disfavored." citing *Purcell*, *supra*). Accordingly, the Court finds that the public interest in the election proceeding as determined by the Ohio Legislature in H.B. 197 weighs against granting Plaintiffs' requested relief.

## IV.  CONCLUSION

The Constitution does not require the best plan, just a lawful one. As is apparent from the briefing in this lawsuit, every group has a different idea of what the best plan would be. But the Court will not declare the Ohio Legislature's unanimous bill to be unconstitutional simply because other options may have been better. For the above reasons, Plaintiffs' motion for a TRO, ECF No. 4, is **DENIED**. LPO's motion for a TRO or preliminary injunction, ECF No. 31, is likewise **DENIED**.

IT IS SO ORDERED.

*/s/ Michael H. Watson*_____
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**